**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company, *Plaintiff-Appellant*, <br><br> v. <br><br> APPLE INC., a California corporation, *Defendant-Appellee.* | No. 20-15241 <br><br> D.C. No. 3:18-cv-05945-VC <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted May 10, 2021
San Francisco, California

Filed July 13, 2021

Before: Michael D. Hawkins and Eric D. Miller, Circuit
Judges, and Jane A. Restani,[*] Judge.

Opinion by Judge Restani

---

    [*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

**SUMMARY**[**]

**Lanham Act**

Affirming the district court's summary judgment in favor of Apple Inc. in a trademark infringement action brought by Social Technologies LLC over the use of the MEMOJI mark, the panel held that there was no material issue of fact as to whether Social Tech engaged in bona fide use of the mark in commerce, such that its registration was valid and the mark was entitled to protection under the Lanham Act.

The panel held that mere adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient to establish rights in the mark under the Lanham Act. Use in commerce requires use of a genuine character, in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind. Considering the totality of the circumstances, including relevant non-sales activities, the panel agreed with the district court that the evidence in the record showed that Social Tech's use of the MEMOJI mark was not bona fide in commerce. Accordingly, Apple was entitled to cancellation of Social Tech's trademark registration.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James Kelly (argued) and John M. Pierce, Pierce Bainbridge P.C., Los Angeles, California, for Plaintiff-Appellant.

Dale Cendali (argued) and Mary Mazzello, Kirkland & Ellis LLP, New York, New York; Diana M. Torres and Lauren Schweitzer, Kirkland & Ellis LLP, Los Angeles, California; Megan I. McKeown, Kirkland & Ellis LLP, Houston, Texas; for Defendant-Appellee.

**OPINION**

RESTANI, Judge:

This case involves a trademark dispute between Defendant-Appellee Apple Inc. (Apple) and Plaintiff-Appellant Social Technologies LLC (Social Tech) over the use of the MEMOJI mark under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Social Tech challenges the district court's decision to grant summary judgment in Apple's favor on the basis that Social Tech did not engage in bona fide use of the MEMOJI mark in commerce, as required by the Lanham Act. Social Tech claims that its use of the MEMOJI mark during pre-sales activities exhibited its bona fide intent to use the mark in commerce, and that the district court improperly determined that Social Tech rushed to market solely to reserve its rights in the mark. We conclude that summary judgment in favor of Apple is appropriate in this case because there is no material issue of fact as to whether Social Tech engaged in bona fide use of the MEMOJI mark in commerce. The judgment of the district court is affirmed.

## BACKGROUND

In April 2016, Social Tech filed an intent-to-use trademark application for the trademark MEMOJI, in connection with mobile phone application software.[1] Following substantive examination, the United States Patent and Trademark Office (USPTO) granted a Notice of Allowance to Social Tech (notice that upon proof of use of the mark in commerce, through the filing of a Statement of Use, the registration would be issued) on January 30, 2018. In March 2018, Social Tech sought, and was granted, a six-month extension of time in which to file its Statement of Use.

After Social Tech filed its application, Lucky Bunny LLC (LB) filed a trademark application based on actual use in commerce for the MEMOJI trademark on April 3, 2017, in connection with its mobile phone application software.[2]

---

[1] "MEMOJI" refers to the use of the word as a trademark, whereas "Memoji" refers to the name of the mobile phone application.

[2] The April 2017 trademark application was the second such application that LB filed for the MEMOJI mark. In October 2014, LB launched the mobile phone-based application Memoji, which allowed users to transform photographs and videos of themselves into emoji-style characters and to send such images and videos to others. The application attracted tens of thousands of downloads and significant celebrity attention. On October 29, 2014, LB filed its first trademark application for the trademark MEMOJI in connection with mobile phone application software based on actual use in commerce, and for the same mark in connection with apparel on an intent-to-use basis. Apple claims that LB maintained continuous use of the MEMOJI mark in commerce, as individuals continued to download and use its application. Ultimately, while LB had received a Notice of Allowance from the USPTO for its application, the application was deemed abandoned in December 2015, after LB failed to file a Statement of Use. In light of our disposition, we need not decide whether LB acquired senior rights in MEMOJI and assigned them to Apple or whether LB abandoned any rights it had.

The examination of LB's application was suspended until the final disposition of Social Tech's application became clear. In May 2018, a representative acting on behalf of Apple contacted Social Tech to inquire about its willingness to sell the rights and goodwill associated with the MEMOJI mark. Social Tech rejected this offer. Apple (through a third-party subsidiary) then contacted LB and negotiated an assignment of all of LB's rights and goodwill associated with the MEMOJI mark, including its suspended application filed in April 2017. This assignment was executed in May 2018 and recorded with the USPTO in June 2018.[3] Apple announced its acquisition of MEMOJI from LB on June 4, 2018, at the Worldwide Developers Conference. And on June 25, Apple released a public beta version of a new operating system that incorporated the Memoji software.

After filing its initial application in 2016, but before Apple's announcement on June 4, 2018, Social Tech engaged in some early-stage activities to develop a business plan and market its Memoji application to potential customers and investors. Social Tech created promotional materials and an investor presentation outlining its business plan, unsuccessfully solicited investors in 2016, and maintained a website promoting its Memoji application beginning in January 2017. In 2018, prior to Apple's announcement, Social Tech secured funding in the amount of $100,000 from a single employee investor. Although Social Tech engaged in initial conversations with a software developer regarding the Memoji mobile phone application

---

[3] The agreement permitted LB to continue to offer its application under its own name through a license-back provision which expired on July 30, 2018, after which point LB's website re-routed visitors to Apple's website.

prior to Apple's announcement, no code was written.[4] Thus, Social Tech's early-stage business activities prior to June 4, 2018, except for a single employee investment, were entirely promotional.

In response to Apple's announcement, Social Tech accelerated its timeline to develop the Memoji software, and on June 28, 2018, just three weeks later, launched its own Memoji mobile phone application on the Google Play Store. Two days later, on June 30, 2018, Social Tech filed a Statement of Use with the USPTO. Its application matured to a Trademark Registration (Reg. No. 5,566,242) on September 18, 2018. One day prior, on September 17, 2018, Apple launched its new iOS 12 operating system, which incorporated Apple's Memoji software into Apple devices.

Within a month of its release, Social Tech's Memoji application was downloaded more than 100 times, and approximately 5,000 downloads are reported for 2018. It is undisputed that Social Tech rushed to develop its Memoji application after Apple's announcement and that the application it released three weeks later contained numerous bugs.[5] Development of the software continued after the application was released, and at some point, Google removed the application for violating developer policies.

---

[4] Social Tech does not dispute that essentially none of the code for its Memoji application had been written prior to Apple's announcement on June 4, 2018.

[5] According to Social Tech's co-founder and president, it "felt forced to advance the timeline for [its] MEMOJI app" after Apple's announcement on June 4 as its "anticipated release for MEMOJI was Fall 2019."

During the three weeks after Apple's announcement, Social Tech's co-founder and president, Samuel Bonet, exchanged a series of emails with a software developer to accelerate the timing of the application's development. In the first of these emails on June 7, Bonet described the circumstances to be "*life changing*" and concluded the email with: "*Time to get paid, gentlemen.*" In a series of subsequent emails, Bonet regularly followed up with the developer on the application's progress. On June 12, Bonet wrote: "*the app needs to erase the background AND the body . . . Of course this may take a little work to get perfect, but as long as we can get close initially, we can start to test and put in commerce*." On the evening of June 13, Bonet wrote to the developer: "*[i]n other news . . . the initial letter has been sent to Apple. The process has begun. Peace and wealth!*"

Bonet continued to follow up on the application's progress over the next several days, noting that "*the editing feature [was] vital*" to "*satisfy the 'editing' requirement of the trademark.*" On June 18, Bonet wrote that Social Tech would release the application for Android in the Google Play Store first, proclaiming: "*We are lining up all of our information, in preparation for a nice lawsuit against Apple, Inc! We are looking REALLY good. Get your Lamborghini picked out!*"

Following the release of Social Tech's application, the correspondence continued between Bonet and the software developer. On July 7, 2018, Bonet directed the approach in updating the Memoji application for the purpose of "*show[ing] updates for the lawsuit*" against Apple. "*[I]f possible,*" he wrote, "*[i]t's better if we split up the updates, so it looks like we have more of them for the lawsuit. To show*"

*we are currently trying to build as we go.*" A week later, on July 14, he wrote again to the developer:

> *The lawsuit is coming together nicely. We should be done with the paperwork and forms in the next several days, then we are just waiting for the trademark registration to file the lawsuit and get PAID. Almost there! How are we looking on everything? What else do you need from me . . . . Of course, it seems best to split these [changes] up in to individual updates, so it appears like we are doing more work. We just need to show some progress.*

Apple commenced a cancellation proceeding before the USPTO on September 26, 2018 to cancel Social Tech's registration for the MEMOJI mark.[6] Subsequently, Social Tech filed suit in district court, alleging trademark infringement against Apple under the Lanham Act and at common law, along with unfair competition in violation of California law, and seeking declaratory judgments of non-infringement and of the validity of its MEMOJI mark registration. Both parties moved for summary judgment, and the district court granted summary judgment in favor of Apple on the ground that no reasonable jury could find that Social Tech engaged in bona fide use of the MEMOJI mark in commerce within the meaning of the Lanham Act. As a result, the district court held that Apple was entitled to cancellation of Social Tech's registration for the MEMOJI

---

[6] Apple filed another trademark application for the MEMOJI mark before the USPTO and received a USPTO Office Action noting that Social Tech's registration prevented Apple's application from maturing to registration due to a likelihood of confusion between the marks.

mark. Social Tech appeals the district court's determination that it lacked bona fide use of the MEMOJI mark in commerce.

## JURISDICTION & STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 over an appeal of a final judgment. We review a district court's grant of summary judgment de novo, *see Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 931 (9th Cir. 2017), and viewing the evidence in the light most favorable to the non-movant, determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). It is nonetheless appropriate where there is no genuine issue of material fact. *See id.*

## DISCUSSION

## I.  The Lanham Act

The Lanham Act provides for the registration of trademarks. 15 U.S.C. § 1051 *et seq.* An applicant that files an intent-to-use application must provide "a verified statement that the mark is in use in commerce" to complete registration of the mark. *Id.* § 1051(b), (d).[7] Use in

---

[7] Trademark applications may be based on either (1) a bona fide intent-to-use the mark in commerce or (2) actual use of the mark in

commerce means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* § 1127. To qualify for registration, a trademark must be "placed in any manner on the goods or their containers or the displays associated therewith" and then the goods must be "sold or transported in commerce." *Id.* For both goods and services, we have held that the Lanham Act's "'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) (citing 15 U.S.C. § 1127). At issue is whether Social Tech used the MEMOJI mark in commerce such that its registration is valid, and the mark is entitled to protection under the Lanham Act.

---

commerce. Intent-to-use applications are filed pursuant to 15 U.S.C. § 1051(b), which states that "[a] person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register. . . ." 15 U.S.C. § 1051(b)(1). At the time of application, the applicant must aver that they have a "bona fide intention to use the mark in commerce," *id.* § 1051(b)(3)(B), though actual use of the mark is not required at the time of application. Trademark Law Revision Act of 1988, Pub. L. No. 100-667, §§ 103, 126, 102 Stat. 3935, 3935–37, 3943 (adding 15 U.S.C. § 1051(b) and revising 15 U.S.C. § 1112 to permit an application on an intent-to-use basis, without use at the time of application). For an application based on an intent to use the mark, a statement of use of the mark in commerce must be filed with the USPTO "[w]ithin six months after the date on which the notice of allowance with respect to a mark is issued."15 U.S.C. § 1051(d)(1). Applications based on actual use in commerce are filed pursuant to 15 U.S.C. § 1051(a). At the time of application for a trademark actually in use, the applicant must specify that (1) "the mark is in use in commerce," and (2) the date on which the mark was first used in commerce, among other things. *Id.* §§ 1051(a)(2), (3)(C); *see id.* § 1127 (defining use in commerce).

### a. Use in Commerce Requirement

It is well-established that use in commerce within the meaning of the Lanham Act requires use of a genuine character. We have discussed in detail Congress's amendment of the Lanham Act in 1988 (also known as the Trademark Law Revision Act of 1988 or "TLRA"), which added the "bona fide" and "ordinary course of trade" requirements to 15 U.S.C. § 1127 to strengthen "use in commerce" and to "eliminate 'token use' as a basis for registration." *Chance*, 242 F.3d at 1156–57, 1159 (internal quotation omitted) ("Congress amended the Lanham Act by redefining the term 'use in commerce' to mean 'the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark.'"); *see* Trademark Law Revision Act of 1988, Pub. L. No. 100-667, § 134, 102 Stat. 3935, 3948, *amending* 15 U.S.C. § 1127; *see also Brookfield Commc'ns, Inc., v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1051–52 (9th Cir. 1999).[8] Mere adoption of a mark without bona fide use in commerce, in an attempt to reserve rights for the future, is insufficient to establish rights in the mark under the Lanham Act. *Chance*, 242 F.3d at 1157, 1159.

Furthermore, "trademark rights are not conveyed through mere intent to use a mark commercially." *Brookfield*, 174 F.3d at 1052; *see also Chance*, 242 F.3d at 1158–59. Rather, an applicant must show use in commerce in a way "sufficiently public to identify or distinguish the marked goods in an appropriate segment of

---

[8] "Bona fide use" is not defined in the Lanham Act. The plain meaning of bona fide use is use that is genuine, sincere and carried out in good faith. *See Bona Fide*, Black's Law Dictionary (11th ed. 2019); *see also Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936 n.3 (9th Cir. 2006).

the public mind." *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979) (internal quotation marks omitted); *see also* 15 U.S.C. § 1127 ("The term 'trademark' includes any word, name, symbol, or device, or any combination thereof . . . used by a person, or . . . which a person has a bona fide intention to use in commerce and applies to register . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ."). A "mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield*, 174 F.3d at 1051.

We consider the totality of the circumstances to determine whether the "use in commerce" requirement has been satisfied so as to establish rights under the Lanham Act. *Chance*, 242 F.3d at 1159. Non-sales activities are relevant where they may indicate whether a good or service has been adequately and publicly used and displayed in commerce. *See id.*; *see also Rearden*, 683 F.3d at 1205 ("[N]on-sales activities such as solicitation of potential customers may be taken into account as part of the 'totality of the circumstances' inquiry."). In *Chance*, we held:

> [T]he district courts should be guided in their consideration of non-sales activities by factors we have discussed, such as the genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of

> the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been "rendered in commerce."

242 F.3d at 1159. Our previous cases make clear that the scope of the non-sales activity is "central to its weight in the totality of the circumstances assessment." *Id.* at 1160 n.4; *see also Brookfield*, 174 F.3d at 1052–53.

In applying this approach in *Chance*, we determined that promotional mailings of 35,000 postcards, which resulted in 128 responses but not a single sale, were insufficient to raise a triable issue of fact as to "use in commerce" within the meaning of the Lanham Act. *See* 242 F.3d at 1159–60. Acknowledging that these early non-sales activities "may have been some evidence of a commercial intent when [ ] mailed," we affirmed the district court's grant of summary judgment because the plaintiff "failed to come forward with sufficient evidence to establish a triable issue of fact that [it] genuinely continued to exploit the mark thereafter." *Id.* at 1160. The court concluded that plaintiff's activities were insufficient to establish a bona fide use because plaintiff had not leased equipment necessary to operate its business, had no working capital or marketing plan, and ordered no goods from its supplier until after the relevant period. *Id.* In contrast, we determined that defendant engaged in significant activities using the mark on a continuous basis, including using the mark as part of its business name, developing a comprehensive public relations campaign, distributing brochures, presenting to potential customers,

and providing interviews to major newspapers. *Id.* at 1154–55, 1160. We held that this conduct sufficiently established bona fide use in commerce. *Id.* at 1160.

In later applying this same approach in *Rearden*, after rejecting evidence of purely internal sales as insufficient to satisfy the Lanham Act, we determined that genuine issues of material fact existed because there was evidence that plaintiffs provided services on at least one occasion to an outside person. 683 F.3d at 1207–08. We cautioned that if plaintiffs had "never provided or even offered their incubation services to outsiders, their purported incubation business would fail to meet either element of the 'use in commerce' requirement" because they would have failed "to show use in a way sufficiently public in nature to identify or distinguish the services in an appropriate segment of the public mind." *Id.* at 1206–07. We emphasized that a mark must be sufficiently public to warrant trademark protection and that the Lanham Act requires external manifestation of a mark to satisfy the use in commerce requirement. *Id.* at 1206–08.

### b.  Use in Commerce by Social Tech

Social Tech argues that the district court erred in granting summary judgment because the evidence sufficiently establishes a triable issue of fact over whether its registration is valid under the Lanham Act.[9] Social Tech contends that Apple is not entitled to cancellation because a reasonable jury could infer that it engaged in bona fide use of the MEMOJI mark in commerce, and that its actions had

---

[9] Social Tech does not raise the common law and state law claims raised before the district court. These issues are therefore waived on appeal.

a legitimate commercial purpose and were "not made merely to reserve [its] right in [the] mark." 15 U.S.C. § 1127. Apple counters that the evidence compels the conclusion that Social Tech did not engage in bona fide use of the MEMOJI mark in commerce, but rather rushed to market solely to reserve its right in the mark. Apple argues this makes Social Tech's registration invalid, entitling Apple to cancellation. We agree with the district court. The evidence in the record before us clearly shows Social Tech's use of the MEMOJI mark was not bona fide use in commerce.

### i.    Social Tech's activities prior to June 4, 2018

Social Tech's early activities fail to use the MEMOJI mark in a sufficiently public manner to establish rights under the Lanham Act. *See Brookfield*, 174 F.3d at 1051; *Rearden,* 683 F.3d at 1206–08; *see also* 15 U.S.C. § 1127. While more than two years went by from the filing of its initial intent-to-use application, Social Tech developed no code for its Memoji application and had no sales. The scope of Social Tech's activities prior to Apple's announcement of its Memoji application — its maintenance of a website containing promotional videos, early stage business planning, a single internal $100,000 investment, and the unsuccessful solicitation of any external investors — was not sufficiently public to establish trademark rights, whether or not Social Tech executed these activities with a good faith intent to eventually use the mark in commerce. *Compare Brookfield*, 174 F.3d at 1051–53 (holding mark use was not sufficiently public when used in a website domain and in "limited [ ] correspondence with lawyers and a few customers"), *with New West*, 595 F.2d at 1200 (holding that prominent display of a mark to 430,000 individuals through mailings and a magazine supplement, resulting in 13,500

subscriptions to New West magazine was sufficiently public to warrant trademark protection).

Unlike in *Rearden*, there is no evidence that any outside person identified the MEMOJI mark with Social Tech prior to Apple's announcement on June 4. *See* 683 F.3d at 1206–07. Instead, Social Tech's activities prior to June 4 are akin to the promotional mailings we found insufficient to raise a triable issue of fact as to "use in commerce" in *Chance*. *See* 242 F.3d at 1159–60. While these activities may serve as some evidence of Social Tech's commercial intent to use the MEMOJI mark, as the district court correctly pointed out, trademark rights are not granted on the basis of commercial intent alone. *See Brookfield*, 174 F.3d at 1052. Because these early activities created no "association among consumers between the mark and the mark's owner" they were not "sufficiently public" to entitle Social Tech to trademark protection for the MEMOJI mark. *Id.* at 1051; *Chance*, 242 F.3d at 1159.[10]

Social Tech argues that these activities had a legitimate business purpose, their limitations were based on reasonable commercial needs, and therefore, it is entitled to trademark protection for its use of the MEMOJI mark. Whatever Social Tech's intent at the time, its early activities were insufficiently public to "identify or distinguish" its MEMOJI mark "in an appropriate segment of the public mind." *See Rearden*, 683 F.3d at 1205 (quoting *New West*, 595 F.2d at 1200); 15 U.S.C. § 1127. Accordingly, evidence of these

---

[10] The fact that Social Tech on March 21, 2018 applied for an extension of time to submit its Statement of Use further supports the notion that as of that date even Social Tech believed that it had not engaged in sufficient use to warrant registration of its MEMOJI mark. *See* 15 U.S.C. § 1051(d) (requiring a filing of a Statement of Use to register a mark).

activities is not enough to raise a triable issue of fact over whether Social Tech established rights to the MEMOJI mark under the Lanham Act prior to Apple's announcement on June 4, 2018. No reasonable jury could find otherwise.

### ii. Social Tech's activities after June 4, 2018

By their nature, trademark disputes are highly fact intensive inquiries, so we are reluctant to decide them at the summary judgment stage except where it is unequivocally clear that there is no triable issue of fact. *See Rearden*, 683 F.3d at 1202. The Lanham Act requires a genuine use of a mark to merit trademark protection. It requires use in commerce that is "bona fide" and "not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Registration based on token use is invalid. *Id.*; *see also Chance*, 242 F.3d at 1156–57, 1159. The district court correctly concluded that this case presents such a scenario. In reviewing the totality of the circumstances in the record before us and construing all inferences in favor of Social Tech, the evidence unequivocally shows that Social Tech had no bona fide use of the MEMOJI mark in commerce, and that it rushed to release its Memoji application solely to reserve its rights in the MEMOJI mark and form the basis of a lawsuit against Apple.

Social Tech acknowledges that following Apple's announcement of its Memoji application on June 4, it rushed to develop the code for and release its Memoji application, but disputes that it did so for the sole purpose of reserving its right to the MEMOJI mark. It is undisputed that Social Tech released its application three weeks following Apple's announcement and subsequently filed a Statement of Use with the USPTO to attempt to complete its registration.

Contrary to Social Tech's arguments, emails exchanged with its software developer make clear that its use of the MEMOJI mark was merely to reserve its rights for a lawsuit against Apple. In correspondence between Social Tech and its software developer, Bonet stated: "*The lawsuit is coming together nicely. . . . [W]e are just waiting for the trademark registration to file the lawsuit and get PAID,*" "*[w]e are lining up all of our information, in preparation for a nice lawsuit against Apple, Inc! We are looking REALLY good. Get your Lamborghini picked out!*" and *"[i]t's better if we split up the updates, so it looks like we have more of them for the lawsuit.*" The significance of this correspondence is obvious. The timing of these emails, during the three weeks the application was almost entirely developed and immediately following the application's launch, and the content of these emails, leave no doubt as to Social Tech's intention in developing its Memoji application. The correspondence compels the conclusion that Social Tech's intention to develop and release its Memoji application was not a bona fide engagement of the mark in commerce, but merely an attempt to reserve its MEMOJI trademark and provide a basis for its lawsuit against Apple. We do not suggest that rushing to develop a product or releasing a product of low quality are themselves sufficient to preclude a finding of bona fide use in commerce. But here, Social Tech fails to provide any evidence that its use of MEMOJI was bona fide.

Social Tech argues that the approximately 5,000 downloads of its Memoji application are enough to raise a question of fact as to whether its use in commerce was bona fide because our precedent has found that a single

transaction in commerce may suffice.[11] Social Tech's trademark deficiencies, however, are of a fundamentally different character. It is not the number of downloads that is lacking here, but a lack of any evidence whatsoever that suggests Social Tech developed its Memoji application for genuine commercial reasons warranting trademark protection. *See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1273 (2d Cir. 1974) (holding that use of a trademark was not bona fide where its "real purpose" in making sales "was to establish and maintain rights in [its] trademark"). To the contrary, the record contains overwhelming and clear evidence that Social Tech's use following Apple's announcement was not genuine. Rushed development of the Memoji software and correspondence with its developer make clear that the development of the Memoji application was for the purpose of reserving Social Tech's rights to the MEMOJI mark and winning a lawsuit against Apple. Thus, the district court's conclusion is amply supported by the record on summary judgment.

Because Social Tech failed to put forward evidence that the release of its Memoji application to the public was for genuine commercial purposes warranting trademark protection, we conclude that it established no triable issue regarding whether it engaged in bona fide use of the MEMOJI mark in commerce within the meaning of the

---

[11] Social Tech cites to *Drop Dead Co., Inc., v. S.C. Johnson & Son, Inc.*, 326 F.2d 87, 93–94 (9th Cir. 1963) (applying law superseded by the TLRA), in support of the contention that a single transaction in commerce is sufficient to constitute bona fide use of the mark. A single sale, or non-sales activities alone, may suffice to merit trademark protection upon review of the totality of the circumstances, so long as the requirements of the Lanham Act are met. *Brookfield*, 174 F.3d at 1052.

Lanham Act. While at the time of its original intent-to-use filing, Social Tech may have had some commercial intent to develop the Memoji application, at the time it filed its Statement of Use, its use of the MEMOJI mark was "made merely to reserve a right in the mark." 15 U.S.C. § 1127. The totality of the record permits only one conclusion: that Social Tech's continued pursuit of trademark registration with the USPTO was based on token use for the purposes of reserving its trademark rights. *See Chance*, 242 F.3d at 1156–57, 1159. Because this directly contravenes the express language of the Lanham Act, the registration is invalid. 15 U.S.C. § 1127. Accordingly, we affirm the district court's grant of summary judgment in favor of Apple.

## II. Cancellation

The Lanham Act authorizes "any person who believes that he is or will be damaged . . . by the registration of a mark" to file a petition to cancel the mark's registration. 15 U.S.C. § 1064. If a petition is filed "[w]ithin five years from the date of the registration," *id.* § 1064(1), then "any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation," *Pinkette Clothing, Inc., v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018) (internal citation omitted). Because the court concludes that Social Tech did not engage in bona fide use of the MEMOJI mark in commerce, its registration is invalid, and Apple is entitled to cancellation of Trademark Registration No. 5,566,242. 15 U.S.C. §§ 1051(d), 1064.

## CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of Apple. **AFFIRMED.**