NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 31 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT A. EATON,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>MONTANA SILVERSMITHS,<br><br>    Defendant-Appellee. | No.    22-35480<br><br>D.C. No. 1:18-cv-00065-SPW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Submitted October 31, 2023[**]

Before:  BENNETT, SUNG, and H.A. THOMAS, Circuit Judges.

Plaintiff Robert A. Eaton sued his former employer Defendant Montana

Silversmiths ("MTS") alleging seven causes of action: (1) retaliation; (2) wrongful

termination; (3) disability discrimination; (4) age discrimination; (5) hostile work

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

environment; (6) defamation; and (7) breach of contract.[1]  Eaton appeals the

district court's judgment in favor of MTS.[2]  Exercising jurisdiction pursuant to 28

U.S.C. § 1291, we **AFFIRM in part, REVERSE in part, and REMAND**.

1.      The district court incorrectly dismissed Eaton's claim under the

Family and Medical Leave Act ("FMLA").  We review de novo a district court's

grant of a motion to dismiss under Rule 12(b)(6), taking all allegations of material

fact as true and construing them in the light most favorable to the nonmoving

party.  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir.

2021).

The district court found that Eaton did not allege a claim under the FMLA or

for a wrongful denial of his FMLA leave.  The district court held that Eaton's

FMLA allegation was not "separate and independent" from his claim alleging that

---

[1] Eaton does not make any arguments on appeal about his defamation claim. He also does not make any arguments on appeal about his breach of contract claim apart from the argument under the Family and Medical Leave Act, which we address *infra*.

[2] Eaton's Notice of Appeal states that he is appealing from the district court's order dismissing his breach of contract claim; order partially granting MTS's motion for summary judgment; order granting MTS's second motion for summary judgment; and judgment in favor of MTS.  In an addendum to his Notice of Appeal, Eaton states that he is also appealing the district court's order denying his motion for clarification and/or reconsideration.  In his appellate briefing, Eaton also raises arguments concerning the district court's decision to grant MTS leave to file a second motion for summary judgment.  We construe pro se pleadings "liberally," *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016), and therefore address each of Eaton's arguments.

2

his termination also constituted breach of contract—with the "contract" being MTS's employee handbook. Therefore, according to the district court, Eaton's FMLA grievance, due to its connection with his breach of contract claim, was barred by a Montana statute that is the "exclusive remedy for wrongful discharge" in the state. *Ruzicka v. First Healthcare Corp.*, 45 F. Supp. 2d 809, 811 (D. Mont. 1997); *see also* Mont. Code Ann. § 39-2-902(3).

But the district court failed to construe Eaton's pro se pleadings "liberally," *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016), and erred in its narrow view of FMLA rights. Under the FMLA, it is "unlawful for any employer to *interfere with*, restrain, *or* deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1) (emphases added). "Interference" includes "not only refusing to authorize FMLA leave, but *discouraging an employee* from using such leave." 29 C.F.R. § 825.220(b) (emphasis added). Eaton adequately alleged an interference with his FMLA leave. An HR staff member told Eaton that he did not qualify for FMLA leave because he was already on worker's compensation and that she would not provide him with a "certification form to fill out, or request FMLA." Taken together, these actions

3

could be viewed as "discouraging" Eaton from using his FMLA leave; he did not need to plead a *denial* of his FMLA leave.[3]

Thus, we reverse the dismissal of the FMLA claim.

2. We review the district court's grant of summary judgment de novo. *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

Montana's Wrongful Discharge from Employment Act ("WDEA") provides the exclusive remedy for an alleged wrongful discharge under Montana law.[4] Under the WDEA, a discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
> (c) the employer violated the express provisions of its own written personnel policy.

---

[3] The same staff member stated in her deposition that a person *is* eligible to go on FMLA leave in conjunction with their worker's compensation leave. According to Eaton's pleadings, this is contrary to what she told him when he asked her for FMLA forms.

[4] Mont. Code Ann. § 39-2-902 (2020). Like the district court, we cite to the 2020 version of the WDEA, even though certain sections were amended in immaterial ways in 2021. *See* 2021 Mont. Laws 319.

Mont. Code Ann. § 39-2-904(1). "'Good cause' means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." *Id.* § 39-2-903(5). "A legitimate business reason is one that is not false, whimsical, arbitrary, or capricious, and . . . must have some logical relationship to the needs of the business." *Putnam v. Cent. Mont. Med. Ctr.*, 460 P.3d 419, 423 (Mont. 2020) (internal quotation marks and citation omitted).

Eaton argues that the district court erred in finding that there was a legitimate business reason to lay him off.[5] MTS executed a three-phase reduction in force ("RIF") from 2016 to 2017, after it learned in 2016 that a major client was not renewing its contract with MTS—which would lead to a loss of substantial revenue for the company. MTS states that Eaton was laid off in the third phase of the RIF because Eaton lacked internal cross-training for different tasks and received the lowest total score on MTS's employee cross-training matrix.

"To defeat a motion for summary judgment on the issue of good cause [in a WDEA case], the employee may either prove that the given reason for the discharge is not good cause in and of itself, or that the given reason is a pretext and

---

[5] Eaton abandoned his challenge to whether MTS complied with its personnel policy in connection with his termination. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) (deeming issues raised in a pro se litigant's brief but not supported by argument abandoned).

not the honest reason for the discharge." *Becker v. Rosebud Operating Servs., Inc.*, 191 P.3d 435, 441 (Mont. 2008) (internal quotation marks and citation omitted). Eaton argues only that the district court did not look at his evidence in ruling on the summary judgment motions. But the district court fully considered the appropriate factual evidence in the record. Eaton only presented his own testimony and uncorroborated answers to interrogatories. Eaton's proffered evidence did not suffice to create a material issue of disputed fact.

Eaton could not "merely set forth conclusory statements," and instead needed to provide "material and substantial evidence" to support his claim that MTS's offered business reason was pretext. *Rolison v. Bozeman Deaconess Health Servs. Inc.*, 111 P.3d 202, 208 (Mont. 2005). Here, the district court found that Eaton "fail[ed] to proffer any evidence in support" of his contention that MTS's offered reason was pretextual or that his score on the matrix was inaccurate. We agree. Eaton's response to MTS's summary judgment motion did not create a disputed issue of fact concerning MTS's showing that its reason for terminating Eaton was "not false . . . [and had] *some* logical relationship to the needs of the business." *Putnam*, 460 P.3d at 423 (emphasis added) (citation omitted).

3. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, "prohibits an employer from discriminating against a qualified individual

6

with a disability because of the disability." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (internal quotation marks and citation omitted). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(1). The district court correctly found that Eaton had failed to establish such disability. The district court noted that Eaton suffered from carpal tunnel syndrome and underwent corrective surgery, but pointed out that Eaton had offered no evidence "illustrating that the impairment limited one or more major life activities or, in the alternative, that after surgery was performed he could be regarded as having such an impairment."

Eaton argues that the district court erred by not referring to the 2008 amendments to the ADA, but the district court correctly referred to all relevant provisions of the ADA. To dispute on appeal the finding that he is not disabled, Eaton points to medical records that were filed *after* the district court's grant of

7

summary judgment with respect to his disability discrimination claim and thus were not before the district court at the time of that ruling.[6, 7]

4. Under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, it is unlawful to discharge any individual aged forty or older "because of [the] individual's age." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting 29 U.S.C. § 623(a)(l)). ADEA claims (like ADA claims) employ a three-stage burden-shifting framework. First, the claimant must establish a prima facie case; then, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action; and last, the employee must prove that the reason advanced by the employer is mere pretext for unlawful discrimination. *Id*.

---

[6] Eaton's disability discrimination claim also fails because Eaton has not shown a triable issue as to MTS's claimed legitimate business reason for terminating his employment. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (explaining that, after an employer proffers a legitimate business reason for an employee's termination, the employee bears the burden of showing that the offered reason is pretextual).

[7] Eaton appeals the district court's grant of summary judgment to MTS on Eaton's hostile work environment claim, but bases his appeal only on his ADA argument. Thus, we also affirm the district court's summary judgment grant to MTS on the hostile work environment claim.

8

Even if Eaton could establish a prima facie case of age discrimination,[8] his ADEA claim would fail because MTS has provided a legitimate business reason for terminating his employment—and Eaton has not pointed to specific evidence establishing that the reason was pretextual.

5. Eaton challenges the district court's summary judgment grant to MTS on Eaton's claim of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).[9]

To survive a motion for summary judgment, a plaintiff first must establish a prima facie case of retaliation: "(1) that [he] was engaging in protected activity/opposition, (2) that [he] suffered an adverse employment decision, and (3) that there was a causal link between [his] activity and the employment decision." *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755 (9th Cir. 1997). If a plaintiff does so, we then use the burden-shifting framework described above.

Eaton alleges that MTS retaliated against him by changing his work schedule for "bringing forth concerns in the company"; giving him an unjustified,

---

[8] The district court noted that Eaton could point to no evidence—apart from his own "Statement of Disputed Facts" and his own submission to the Montana Human Rights Bureau for an investigation—that his employer gave preferential treatment to younger employees. On appeal, Eaton does not point to any evidence that the district court failed to consider.

[9] The district court did not abuse its discretion in allowing MTS to file a second motion for summary judgment. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

poor performance evaluation in retaliation for raising concerns about sexual/racial harassment in the workplace; and laying him off for being on worker's compensation.

The district court originally held that Eaton had failed to make a prima facie case on his claim of being terminated for being on worker's compensation, because that was not a protected activity. The court also held that Eaton's schedule change was not an adverse employment action, because MTS put Eaton on the same schedule as all other employees and gave him additional time to adjust to the standardized schedule. Eaton does not challenge those holdings on appeal. We thus only address the performance evaluation retaliation claims.

In Eaton's initial 2017 Annual Performance Evaluation ("PE v.1"), Eaton received the lowest possible marks in two categories, "Interaction with co-workers" and "Resolves conflicts in an appropriate manner." The "Comments" section stated: "At times [Eaton] creates unwelcoming environment in regard[] to Travis while at the same time interacting well with Rick and Brian" and "[s]idesteps proper reporting of concerns outside of management hierarchy." Eaton then met with Lance Neirby, the Vice-President of Operations at MTS, and Justin Deacon, Eaton's supervisor. In the meeting, Neirby changed Eaton's performance evaluation ("PE v.2"). Neirby kept Eaton's low scores the same. But Neirby changed the comment accompanying "Interaction with co-workers" to

"Challenging relationship exists between employee and direct supervisor." Neirby stated that he changed the comment because Eaton screamed, yelled obscenities, and exhibited aggressive behavior toward Deacon, and Neirby wanted to calm Eaton down.

Eaton claims that the low marks in PE v.1 were retaliatory. Eaton presented admissible evidence that he had never received any notice of the supposed concerns in PE v.1 and that there were no documented concerns filed by other employees, and that he had received strong positive prior ratings regarding his ability to work with teammates.[10] Eaton also notes that the "sidestepping" comment directly contravenes MTS's 2015 Employee Handbook, which states that individuals who experience or witness harassment "must discuss their concerns with their immediate supervisor, Human Resources or any member of management." And Deacon testified that the negative comments regarding Eaton's relationship with Travis were inserted at the direction of Neirby, contrary to the wishes of Deacon as his reviewing supervisor. Deacon also testified that before

---

[10] Eaton's 2014 and 2015 annual performance reviews both rated him "Good" on both "Interaction with co-workers" and "Resolves conflicts in an appropriate manner." Eaton's 2016 annual performance review rated him "Excellent" on "Interaction with co-workers" and "Good" on "Resolves conflicts in an appropriate manner." In addition, the 2016 reviewer included a comment that Eaton "is always in good spirit and is easy to get along with."

11

the performance evaluation meeting that led to PE v.2, Deacon and Eaton got along "pretty good" and never "g[o]t into a fight about anything."

In its first order partially denying summary judgment, the district court found that Eaton "presented sufficient evidence to support a prima facie case of retaliation" and that MTS did not offer any legitimate, nondiscriminatory reason for PE v.1.

In its second summary judgment order, however, the district court did not discuss Eaton's claim that the PE v.1 negative evaluation was retaliatory. Instead, it focused entirely on whether MTS articulated a legitimate, nondiscriminatory reason for the change from PE v.1 to PE v.2, and whether the proffered legitimate reason was pretextual. Because we review summary judgment decisions de novo, we will analyze the PE v.1 claim based on the record before the district court.[11]

Eaton established a prima facie case showing that PE v.1 was retaliatory. First, Eaton engaged in protected activity when he repeatedly reported alleged instances of sexual harassment and racial discrimination to the Human Resources Department and other members of management. Second, PE v.1, which gave Eaton the lowest possible marks for two categories, was final, shared with his

---

[11] Eaton's briefs do not appear to argue that the change made in PE v.2 was retaliatory, and thus that claim is waived. But even were we to analyze that claim on the merits, we would agree with the district court that Eaton did not present any specific or substantial evidence regarding that claim.

12

supervisors, submitted to the Human Resources Department, and listed as one of the criteria to be considered in the RIF. Eaton thus suffered an adverse employment decision.[12] Third, there was evidence to suggest that a causal link existed between the protected activity and the adverse employment decision. Eaton filed a personal knowledge affidavit stating that he continued to observe instances of harassment, and that he repeatedly contacted other higher-ups in the company about it to no avail from 2015 through 2017. And Neirby's comment accompanying the low marks stating that Eaton "[s]idesteps proper reporting of concerns outside management hierarchy" could be read by a reasonable juror as referring to Eaton's repeated reporting of suspected sexual and racial harassment.

Because Eaton has established a prima facie case of retaliation, the burden shifts to MTS "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (citation omitted). MTS, in its Answering Brief, does not proffer any business justifications for issuing Eaton the lowest possible marks in two

---

[12] In its first summary judgment order, the district court discussed Supreme Court and Ninth Circuit precedent and held that "whether a negative evaluation constitutes an adverse employment action depends on the facts and circumstances of each case," which includes "whether the evaluation was . . . negative, how widely it was disseminated, if it was final, and whether it resulted in any adverse employment consequences." The district court found such an adverse employment action here. We agree. *See, e.g.*, *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("[U]ndeserved performance ratings, if proven, would constitute 'adverse employment decisions' cognizable under this section.").

13

categories in PE v.1, focusing (as the district court did in its second order) only on the changes from PE v.1 to PE v.2.  Even if we ignore MTS's briefing failure and look to MTS's evidence before the district court, we are still left with a triable issue of fact as to pretext.

In the district court, MTS stated, without providing a citation, that "[t]he uncontroverted testimony of both Deacon and Neirby demonstrate that Eaton had a couple of areas that required improvement, and that needed to be brought to his attention as an employee."  MTS also pointed to Neirby's deposition testimony: "The reason those comments were added is because your inability to effectively communicate was leaving the team feeling as if they were walking on eggshells around you at all times because they didn't know how you would react, nor would you be cordial or not cordial.  It was sometimes as if they didn't even exist, you would not acknowledge their existence."

Eaton has presented sufficient evidence that a reasonable juror could view MTS's proffered business justifications as pretextual.  Eaton averred that he continued to report instances of sexual harassment and racial harassment throughout 2015 and 2017.  Before PE v.1, Eaton had never received any notice of the supposed concerns.  Indeed, he had received strong positive prior ratings regarding his ability to work with teammates.  The comment for allegedly sidestepping MTS's proper channels to report concerns contravenes MTS's 2015

14

Employee Manual. And Deacon, who testified that he and Eaton got along before PE v.2, stated that the negative comments in PE v.1 were inserted at the direction of Neirby. Viewing the evidence in the light most favorable to Eaton, there are genuine issues of material fact that should be left for a jury to decide.

Because Eaton has provided sufficient evidence of a triable issue of fact as to whether MTS's proffered business justifications for PE v.1 were pretextual, we reverse the district court's grant of summary judgment as to the retaliation claim with respect to PE v.1.[13]

For the foregoing reasons, we reverse the dismissal of Eaton's FMLA claim and the grant of summary judgment to MTS on Eaton's retaliation claim with respect to PE v.1. We affirm the grant of summary judgment to MTS on Eaton's claims under the WDEA, the ADA, and the ADEA.

**AFFIRMED in part, REVERSED in part, and REMANDED.**[14]

---

[13] Eaton argues for the first time on appeal that the former counsel for MTS defamed him, and that the district court judge failed to recuse herself due to a "pro se litigant bias." These arguments were never presented to the district court, and we do not consider them for the first time on appeal. *See Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1043 n.4 (9th Cir. 2011).

[14] The parties shall bear their own costs on appeal.